UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In re:                                              Case No.: 16-13134-11

   AARON HOLZHUETER,

            Debtor.

   AARON HOLZHUETER,

               Plaintiff and Counter-Defendant,
         v.                                          Adversary No.: 16-79

   DAVID J. GROTH, GALE I. GROTH,
   DAVID J. HEINECKE, JUDITH A.
   HEINECKE, JAMES G. PRITCHARD,
   JOHN W. TESCH, PATRICIA D. TESCH,
   CARL A. NICHOLSON, GWENDOLYN R.
   NICHOLSON, BARBARA L. WEGNER,

               Defendants and Counter-Claimants.

## **MEMORANDUM DECISION**

The Debtor, Aaron Holzhueter ("Holzhueter" or "Debtor"), filed a

voluntary Chapter 11 Petition on September 12, 2016. He filed an adversary

complaint on September 14, 2016, against Defendants David J. and Gale I.

Groth, David J. and Judith A. Heinecke, James G. Pritchard, John W. and

Patricia Tesch, and Barbara L. Wegner (collectively, the "State Court Plaintiffs")

seeking a declaratory judgment that he is not liable to the State Court

Plaintiffs, that their claims[1] be disallowed, and determining that any debt to

them is dischargeable.

The State Court Plaintiffs filed an Answer and Counterclaim to the

Debtor's Adversary Complaint on October 17, 2016. They seek a determination

under 11 U.S.C. §§ 523(a)(2), (a)(6), and (a)(19) that certain debts are

nondischargeable and request costs and actual attorneys' fees.

Holzhueter and the State Court Plaintiffs agree this is a core proceeding.

Nonetheless, the State Court Plaintiffs filed a motion requesting that this Court

abstain from determining the issues related only to liability and

dischargeability of their securities law claims under 11 U.S.C. § 523(a)(19).

## STATEMENT OF FACTS

While the parties provide a full description of the alleged facts, the facts

necessary to decide abstention are brief. The State Court Plaintiffs invested in a

Ponzi Scheme run by the Debtor's father, Loren Holzhueter (now deceased),

through a company called Insurance Service Center ("ISC"). As the name

suggests, ISC is an insurance agency that provides insurance and investment

services to the public.

At the time the Debtor filed bankruptcy, the State Court Plaintiffs had

each filed a separate state court action. These six actions were pending in three

different Wisconsin county circuit courts. Those actions allege violations of

Wisconsin's state securities laws and common law fraud. The State Court

---

[1] Each of the State Court Plaintiffs filed a Proof of Claim identified on the Claims
Register as Claim Nos. 47-1, 48-1, 49-1, 50-1, 51-1, and 52-1.

Plaintiffs allege the Debtor, along with others,[2] conspired to defraud each of the
State Court Plaintiffs of their investments in the ISC-offered securities. The
State Court Plaintiffs contend the Debtor's debts are nondischargeable under
11 U.S.C. § 523(a)(2), (6), or (19) arising out of securities law violations
contrary to Wis. Stat. §§ 551.509(7)(a), (b), or (c) or, alternatively, from common
law fraud in connection with the sale of securities.

The Debtor disputes he is liable for securities fraud. The Securities and
Exchange Commission filed the District Court Action. A receiver was appointed
in that case and a stay of the state court proceedings was issued on October
20, 2016. The State Court Plaintiffs were named as interested parties and
appeared in the District Court Action. They opposed imposition of the stay,
opposed the appointment of a receiver, and filed various other pleadings in the
District Court Action.

## DISCUSSION

Federal district courts have "original and exclusive jurisdiction" over all
cases under title 11 of the United States Code. 28 U.S.C. § 1334(a). Federal
district courts also have "original but not exclusive jurisdiction" "of all civil
proceedings arising under the Bankruptcy Code, or arising in or related to
cases under the Bankruptcy Code." *In re Kimball Hill, Inc.*, 565 B.R. 878, 882
(Bankr. N.D. Ill. 2017); 28 U.S.C. § 1334(b). District courts may refer these

---

[2] Others named in these actions include ISC, the Debtor's mother, Arelene, the estate
of his deceased father Loren, Honefi, LLC, and Quality Tax and Accounting Services,
LLC ("Quality"). Each of these defendants other than Quality are named defendants in
an action pending in the U.S. District Court for the Western District of Wisconsin as
Case No. 15-cv-45 (the "District Court Action").

cases to the bankruptcy judges in their respective districts. 28 U.S.C. § 157(a).

In accordance with section 157(a), the District Court for the Western District of

Wisconsin has referred all of its bankruptcy cases to the Bankruptcy Court for

the Western District of Wisconsin. W.D. Wis. Admin. Order 161 (July 12,

1984).

A bankruptcy court to whom a case has been referred may enter a final

judgment on any "core" proceeding arising under the Bankruptcy Code or

arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Whether a

debt is non-dischargeable in a debtor's bankruptcy case is a "core" proceeding.

28 U.S.C. § 157(b)(2)(I). Similarly, whether a filed claim is allowed and the

amount of that claim are also core proceedings. 28 U.S.C. § 157(b)(2)(B). The

parties agree these are core proceedings. Thus, jurisdiction is both undisputed

and established.

## A. **Abstention**

**Mandatory Abstention**

Section 1334(c) provides two avenues for abstention: mandatory and

permissive. The mandatory abstention provision reads:

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district court shall abstain from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). There are five elements that must be established for

mandatory abstention: (1) a timely motion of a party, (2) relating to a cause of

4

action arising under state law, (3) which is a non-core proceeding in
bankruptcy court, (4) where the only basis for federal jurisdiction is section
1334, (5) that has also been commenced in a state forum of appropriate
jurisdiction. *Bennett v. Sveinsvoll (In re Bennett)*, 376 B.R. 918, 921 (Bankr.
W.D. Wis. 2007).

Discussion of mandatory abstention in this case may begin and end with
element one. No party has filed a motion arguing that mandatory abstention
applies. Accordingly, in the absence of a timely motion and without further
discussion, section 1334(c)(2) does not apply.

### Permissive Abstention

Section 1334(c)(1) governs permissive abstention and provides the court
may abstain from hearing a particular matter arising under title 11, or arising
in or related to a case under title 11. 28 U.S.C. § 1334(c)(1). This provision
recognizes that bankruptcy courts have exclusive and nondelegable control
over the administration of an estate, but in exercising that control "may, where
the interests of the estate and the parties will best be served . . . consent to
submission to State courts of particular controversies involving unsettled
questions of state . . . law and arising in the course of bankruptcy
administration." *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483
(1940). Abstention under 28 U.S.C. § 1334(c)(1) is not mandatory. It merely
grants discretion to abstain if abstention is in the interest of justice or in the
interest of comity or respect for state law.

In deciding whether to abstain, courts in this circuit look to the following factors:

(1)   the effect or lack thereof on the efficient administration of the estate;

(2)   the extent to which state law issues predominate over bankruptcy issues if the court recommends abstention;

(3)   the difficult or unsettled nature of applicable law;

(4)   the presence of related proceedings commenced in state court or other non-bankruptcy proceedings;

(5)   any jurisdictional bases, other than 28 U.S.C. § 1334;

(6)   the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)   the substance rather than the form of an asserted core proceeding;

(8)   the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)   the burden of the bankruptcy court's docket;

(10)   the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)   the existence of a right to a jury trial;

(12)   the presence in the proceeding of non-debtor parties;

*Ocwen Loan Servicing, LLC v. AIG Fed. Savings Bank (In re Laddusire)*, 494 B.R. 383, 392 (Bankr. W.D. Wis. 2013) (citing *In re Chicago, M., St. P. & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993)). No one factor is dispositive. Section 1334(c)(1) is concerned with comity and respect for state law. *See In re Chicago, M., St. P. & Pac. R.R. Co.,* 6 F.3d at 1189. These considerations should be

applied flexibly to the particular facts of each case. *In re Laddusire*, 494 B.R. at

392 (citations omitted).

### (1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention

Contrary to the State Court Plaintiffs' position, there will be a significant

disruption in the efficient administration of the bankruptcy estate if this Court

abstains. As described, the State Court Plaintiffs have filed six separate actions

in three Wisconsin counties. Each case alleges violations of Wisconsin state

securities laws and claims for common law fraud in connection with the sale of

securities. None of the state court cases have been tried. No trials are currently

scheduled and those proceedings are stayed.

The Debtor argues that if the Court abstains from this matter, the State

Court Plaintiffs' claims could remain undecided and unliquidated for over a

year depending on the state courts' calendars. The State Court Plaintiffs argue

that notwithstanding the adversary proceeding, the Debtor has still moved

forward with proposing a Plan[3] and thus there would be no impact on the

efficient administration of the case. The Debtor responds that this could delay

confirmation of a plan and could impact the distributions to creditors.

---

[3] The claims filed by the State Court Plaintiffs total $4,871,737.50, including claims for treble damages and attorneys' fees. These sums represent approximately 10% in number and 42% in amount of the total unsecured claims. The State Court Plaintiffs represent 6 of the 51 Claimants' proofs of claim ("ISC Claims") that relate to the investments that are the subject of the District Court Action and this adversary. The 51 claims, as filed on the claims register in this case, total $10,990,815.76.

Even if this Court abstains, both parties acknowledge the ancillary state court proceedings are subject to a stay imposed by Judge Peterson in the District Court Action referenced above. If that stay were lifted, the State Court Plaintiffs would have to return to the state courts and try to set six cases in three different counties for trial.[4]

This Court has already selected a trial date in October. There is nothing in the record to indicate the state court proceedings have been consolidated into one state court case. Even if consolidated, no trial date has been set. If this Court abstains, there is the real possibility of a significant delay in the administration of this case and disposition of the claims of the State Court Plaintiffs. Further, there is the potential of three state courts reaching conflicting results in six separate cases. The counterclaims of the State Court Plaintiffs are all based on the same operative facts. While they suggest state courts should try the claims that, in this Court, fall under section 523(a)(19), they concede the section 523(a)(2) and (6) claims must be tried in this Court. Abstention on one of the claims presented could result in inconsistent results on dischargeability. These considerations lead to the conclusion that delay and inefficient administration would be likely if the Court abstained. The issues can be determined in a more expeditious and efficient manner in this Court. Thus, factor (1) weighs in favor of the Debtor.

---

[4] The counties are Dodge, Jefferson, and Waukesha. The median age of disposition of civil actions in those counties is 12, 43, and 71 months, respectively. Wis. S. Ct. Report 13A, Civil Disposition Summary, 1/13/17.

**(2)    The extent to which state law issues predominate over bankruptcy issues**

Next, factor (2) also weighs against abstention. The State Court Plaintiffs'
claims are based on state securities law, which do exist outside of bankruptcy.
However, the central issues in the Debtor's adversary proceeding relate to
whether the State Court Plaintiffs hold allowed claims against the Debtor and,
if so, whether those claims are dischargeable. The State Court Plaintiffs have
filed proofs of claim in this matter, which triggers the allowance/disallowance
of claims procedures in bankruptcy. Objection to and disallowance of those
claims is included in the claims in this adversary proceeding. In addition, the
central focus of the State Court Plaintiffs' counterclaims relates to whether
their claims against the Debtor are nondischargeable. It is uncontested that
these are "core" issues as defined under 28 U.S.C. § 157(b)(2)(B) and (I) and
wholly within this Court's jurisdiction.

The State Court Plaintiffs dispute the Debtor's claim that a federal
bankruptcy issue is present regarding the dischargeability of a finding of
liability under Wisconsin's "control person" liability statute, Wis. Stat.
§ 551.509(7)(b). They argue that determining discharge under section
523(a)(19) is only "hypothetically implicated" because liability must first be
established under Wis. Stat. § 551.509(7)(b). If successful, the State Court
Plaintiffs contend a hearing on dischargeability will be unnecessary because
they would have prevailed in establishing a violation of securities law "based on
the Debtor's active participation" in his father's Ponzi Scheme. In essence, the
State Court Plaintiffs assert that whatever securities violations are alleged the

federal court should abstain and permit state courts to determine dischargeability.

The Debtor asserts factor (2) is neutral because neither state law issues nor federal law issues predominate. On the one hand, whether the Debtor violated Wisconsin's securities laws is an issue of state law. On the other hand, whether that liability is excepted from discharge is a federal issue entirely within this Court's jurisdiction. Even if liability is determined based on state law, bankruptcy courts regularly apply state law in determining dischargeability. The central determinations are whether the claims are nondischargeable and whether they are allowed. Consequently, it does not appear the state securities law issues can be said to predominate over the bankruptcy issues.

### (3)    The difficulty or unsettled nature of the applicable law

The third factor weighs against abstention. The State Court Plaintiffs readily concede that the Wisconsin securities law issues governing their claims "are not difficult to apply." Despite this concession, the State Court Plaintiffs argue under *Bricker v. Martin*, 348 B.R. 28, 35 (W.D. Pa. 2006), that the Court should abstain.

The district court in that case affirmed the *sua sponte* decision of the bankruptcy court to abstain from the issue and grant relief from stay to pursue state law claims for the sale of unregistered securities. The district court found the bankruptcy court did not abuse its discretion in permissively abstaining. Although the settled nature of the law weighed against abstention, the court

reasoned there was no abuse of discretion "'[w]here a cause of action for monetary damages based primarily on state law can be litigated in state court *without substantial delay* and disruption to the orderly administration of the estate, the best forum for resolution of that action is state court, *irrespective* of whether the legal issues present unsettled questions of state law.'" *Id.* at 35 (citation omitted) (emphasis added).

As described, the District Court's stay of all state court proceedings remains firmly in place. Even if the District Court lifts the stay, the Debtor would need to coordinate six lawsuits across three different counties. This splintered adjudication of claims would delay the orderly administration of the Debtor's bankruptcy estate to the detriment of other creditors. The applicable state law is neither unsettled nor difficult to apply. Thus, factor (3) weighs against abstention.

### (4)    The presence of a related proceeding commenced in state court or other non-bankruptcy court

The State Court Plaintiffs commenced their state law securities fraud claims against the Debtor prior to this adversary proceeding. This militates in favor of abstention. However, in light of the District Court stay and the lack of any scheduled trials, the weight of this factor is minimal.

### (5)    The jurisdictional bases, if any, other than 28 U.S.C. § 1334

Factor (5) also weighs in favor of abstention because there is a lack of independent jurisdiction. There is no federal question jurisdiction over the counterclaim or the basis for the proof of claim. The claim at issue is based strictly on state law. Neither does 28 U.S.C. § 1332 provide a basis for

11

jurisdiction because diversity of citizenship is lacking. Therefore, section 1334 provides the only jurisdictional basis and this factor weighs in favor of abstention.

**(6)    The degree of relatedness or remoteness of the proceeding to the main bankruptcy case**

Factor (6) weighs against abstention. The claims directly affect proper administration of the estate and are integral to the main case. Sixty-four creditors have filed claims in this case seeking payment. The amounts of distributions on those claims could be substantially affected by the outcome in this adversary.

Liability in the state court actions is based on claims under Chapter 551 of the Wisconsin Statutes and fraud claims. Any decision, however, is integrally related to dischargeability under 11 U.S.C. §§ 523(a)(2), (6), or (19) and those are core proceedings. This will affect the amount of the claims in the case and distributions to creditors. Further, the request is that this Court only abstain from determination of the claims under section 523(a)(19). This leaves the bankruptcy court to determine the claims of nondischargeability under 11 U.S.C. §§ 523(a)(2) and (6), thus further heightening the possibility of conflicting determinations.

**(7)    The substance rather than form of an asserted "core" proceeding**

Factor (7) weighs against abstention. The issue is whether the Debtor violated Wisconsin's Uniform Securities law giving rise to claims that are nondischargeable and allowable in this case. The State Court Plaintiffs argue

under *Northern Pipeline Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982), and *Humboldt Express, Inc. v. Wise Co. (In re Apex Exp. Corp.)*, 190 F.3d 624 (4th Cir. 1999), that bankruptcy courts should avoid interpreting "core proceeding" broadly, thereby cloaking state law actions as a "core" issue under 11 U.S.C. § 157. The Debtor argues the substance of this proceeding is core because the State Court Plaintiffs have a claim against his bankruptcy estate and the dischargeability of those potential claims are "core" proceedings.

The court in *Bricker v. Martin* reasoned under factor (7) that if a debtor is found not liable under a state's securities laws, determining dischargeability becomes moot. 348 B.R. at 36. In such cases, determining liability "only becomes core if a debt is found to exist, despite the fact it is core in form." *Id.* However, if liability is established the matter would become core and the amount of the debt would have a direct bearing on allowance or disallowance of a claim. The allowance or disallowance of a claim against a debtor's estate is a core proceeding under 11 U.S.C. § 157(b)(2)(B). As such, this factor weighs against abstention. A determination of liability in a state court may resolve some of the issues but could still leave issues regarding dischargeability under sections 523(a)(2) and (6) and would leave issues related to administration of the estate and funds resulting from such claims for this Court to address. Further, as discussed below, this Court has jurisdiction to determine the section 523(a)(19) claim and need not await a liability determination by state courts.

**(8)    The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state courts with enforcement left to the bankruptcy court**

Factor (8) weighs against abstention. While it is possible to sever the State Court Plaintiffs' state law claims from the other core bankruptcy matters, the issue is whether that is feasible or practical. As described, the State Court Plaintiffs filed six separate state securities law actions in three separate counties. They have also filed counterclaims in this action based not only on state securities law violations, but also under 11 U.S.C. §§ 523(a)(2) and (6). This fractured adjudication of claims is wholly inefficient and may lead to inconsistent outcomes. Thus, factor (8) weighs against abstention.

**(9)    The burden on the court's docket**

Factor (9) also weighs against abstention. This matter is already set for a trial in October in this Court. The District Court has indefinitely stayed the State Court Plaintiffs' actions in the state courts. The District Court entered an Order approving the sale of ISC, but did not lift the stay. Accordingly, the State Court Plaintiffs' argument that the District Court will lift the stay in the near future is speculative at best. Abstention would potentially delay other proceedings in the main case or distributions if a plan were confirmed because it is unclear when six separate trials in three counties could be scheduled even if there were no stay of those actions in effect. It is highly unlikely that the state courts could adjudicate these three cases more promptly than they will be adjudicated in this Court. This Court's docket is not so burdened that it cannot timely address this action.

**(10)   The likelihood that the commencement of the proceeding in a bankruptcy court involved forum shopping by one of the parties**

Factor (10) is neutral. There is nothing in the record to support a finding that either party engaged in forum shopping as that term is defined by the Seventh Circuit. *See, e.g. Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 709-10 (7th Cir. 2016).

The State Court Plaintiffs argue that forum shopping was a factor in "escap[ing] . . . inhospitable state-court tribunals" and to "seek refuge" from the six state court actions in three separate counties. The Debtor concedes that the cost and expense of defending six separate suits in three different counties while at the same time being a party in the District Court Action were factors contributing to the filing of the bankruptcy. The Debtor states this assists to "centralize litigation in a quick, cost-effective manner." It is also clear that other factors including issues with secured lenders contributed to the filing. Bankruptcy is a means of centralizing litigation in a single forum. Doing so often reduces cost, eliminates piecemeal litigation that may result in conflicting determinations, and aids in placing all similarly-situated creditors on an equal footing.

**(11)  The existence of a right to a jury trial**

Factor (11) potentially weighs in favor of abstention. The State Court Plaintiffs assert this factor controls. Once more, they cite *Bricker v. Martin* for the proposition that "the right to a jury trial is so significant as to be almost dispositive of the question of whether to abstain." 348 B.R. at 37 (citation

15

omitted). The Debtor argues the State Court Plaintiffs have not timely demanded a jury, and by filing proofs of claim they have submitted themselves to this Court's equitable powers. *See Granfinanciera v. Nordberg*, 492 U.S. 33, 59 n.14 (1989). There is nothing in the record to suggest that the state court actions include a demand for a jury. Thus, this Court cannot determine whether this factor actually weighs in favor of abstention.

Assuming, however, that a jury demand was made, the right of a trial by jury is declared in Art. I, § 5 of the Wisconsin Constitution. Under Wis. Stat. § 805.01(2), "[a]ny party entitled to a trial by jury or by the court may demand a trial in the mode to which entitled at or before the scheduling conference or pre-trial conference, whichever is held first." Under subparagraph (3), the failure of a party to demand a trial by jury in accordance with sub. (2) constitutes waiver. Wis. Stat. § 805.01(3). Thus, the State Court Plaintiffs are likely entitled to a jury trial in the state court provided jury demands were timely made. That, however, is not the end of the analysis.

The State Court Plaintiffs filed proofs of claim in the Debtor's bankruptcy. In addition, they also filed counterclaims against the Debtor. The Supreme Court in *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990), concluded that a creditor triggers the claims allowance process when he files a proof of claim against a debtor's estate. Thus, when a creditor files a proof of claim against a debtor's estate, he or she brings themselves within the equitable jurisdiction of the Bankruptcy Court. As a result, there is no Seventh Amendment right to a jury trial. *Id.* at 45.

16

While the State Court Plaintiffs may be entitled to a jury in the state court actions, it appears they have waived that right in this forum. However, the eleventh factor weighs marginally in favor of abstention.

### (12)  The presence in a proceeding of non-debtor parties

Factor (12) is neutral. Contrary to the State Court Plaintiffs' position that the presence of non-debtor third parties in the state court actions weighs in favor of abstention, in fact there are no parties to this adversary proceeding other than the Debtor. Once the District Court Stay is lifted, the State Court Plaintiffs are free to pursue those other parties in the state court actions. Accordingly, factor (12) does not tip the scale either way. *See Asousa P'ship v. Pinnacle Foods, Inc. (In re Asousa P'ship)*, 264 B.R. 376, 391 (Bankr. E.D. Pa. 2001).

### B.  11 U.S.C. § 523(a)(19)

The State Court Plaintiffs argue that under 11 U.S.C. § 523(a)(19)(B) liability for securities law violations must be determined by a non-bankruptcy tribunal before a bankruptcy court determines dischargeability. They acknowledge the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") "invited debate as to whether § 523(a)(19) now allows a bankruptcy court to render its own determination of liability for securities law violations . . . or whether the liability determination must still be made outside of the bankruptcy court." *Faris v. Jafari (In re Jafari)*, 401 B.R. 494, 496 (Bankr. D. Colo. 2009). Nonetheless, they urge this Court to conclude a determination must be made by a different tribunal.

There is a clear split in authority as to "whether a bankruptcy court may itself determine whether a violation of securities laws occurred or whether the bankruptcy must rely [sic] upon another tribunal for such determination." *Terek v. Bundy (In re Bundy)*, 468 B.R. 916, 919 (Bankr. E.D. Wash. 2012). The bankruptcy courts that first addressed this issue held "that some other regulatory or judicial tribunal must first make a determination that securities law has been violated before the bankruptcy court can decide whether the debt is subject to discharge." Susan V. Kelley, *Ginsberg & Martin on Bankruptcy* § 11.06[S] (5th ed. supp. 2016). On the other hand, there are a growing number of bankruptcy courts that reason section 523(a)(19)'s plain language does not divest the court from fully adjudicating liability, damages, and exception to discharge in a section 523(a)(19) based adversary proceeding. *See Floyd v. Hill (In re Hill)*, 495 B.R. 646, 654 (Bankr. D.N.J. 2013); *Tradex Glob. Master Fund SPC, Ltd. v. Pui-Yun Chui (In re Pui-Yun Chui)*, 538 B.R. 793, 807 (Bankr. N.D. Cal. 2015); *Williams v. Sato (In re Sato)*, 512 B.R. 241, 252 (Bankr. C.D. Cal. 2014); *Gelber v. Jensen–Ames (In re Jensen–Ames)*, 2011 WL 1238929, at *7-8, 2011 Bankr. LEXIS 1207, at *21 (Bankr. W.D. Wash. Mar. 29, 2011).

Two courts in the Seventh Circuit have addressed whether section 523(a)(19)(B) requires determination of liability by a different tribunal, and have reached opposite conclusions. *Compare Filian v. Jansma (In re Jansma)*, 2010 Bankr. LEXIS 235, at *13 (Bankr. N.D. Ill. Jan. 21, 2010) (Hollis, J.) *with*

18

*Dever v. Miller (In re Miller)*, 2010 Bankr. LEXIS 3622, at *10-11 (Bankr. N.D. Ind. 2010) (Dees, J.).

Congress added section 523(a)(19) to the Bankruptcy Code as part of the Sarbanes-Oxley Act of 2002. *See Sarbanes-Oxley Act of 2002*, Pub. L. No. 107-204 § 803(3), 116 Stat. 745. Prior to BAPCPA, section 523(a)(19) read: "A discharge under section . . . 1141 . . . does not discharge an individual debtor from any debt—

> (19) that—
>
>> . . .
>
>> (B) results from—
>
>>> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>
>>> (ii) any settlement agreement entered into by the debtor; or
>
>>> (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19) (2004). BAPCPA amended part (B) of subsection 523(a)(19) by inserting the phrase "before, on, or after the date on which the petition was filed."

Today, section 523(a)(19)(B) provides: "A discharge under section . . . 1141 . . . does not discharge an individual debtor from any debt—

> (19) that—
>
>> . . .
>
>> (B) results, *before, on, or after the date on which the petition was filed,* from—

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19) (2017) (emphasis added).

By adding the language in (B), "[t]he 2005 amendments eliminated any requirement that a prepetition judgment exist before the section 523(a)(19) exception to discharge may be applied." 4 *Collier on Bankruptcy* ¶ 523.27 (16th ed.) The additional language has generated unnecessary confusion when a pre-bankruptcy judgment does not exist prior to a debtor's bankruptcy filing. *See, e.g., Dever v. Miller (In re Miller)*, 2010 Bankr. LEXIS 3622, at *8. The plain language merely eliminates the temporal constraint that the judgment existed before the bankruptcy was filed.

This additional language simply expanded the time frame for entry of the predicate consent order, settlement order, settlement agreement, or court decree. The additional language effectively creates a roadblock to a debtor's race to the bankruptcy court before the non-bankruptcy forum rendered a decision on the investor's securities fraud claim. *See In re Hill*, 495 B.R. at 656. "BAPCPA made it clear that such a race to the bankruptcy court would not disable this exception to discharge." *Id.*

In determining whether this Court has authority to try the immediate case on the merits, the Court should adhere to the basic canon of statutory

interpretation by giving meaning to every word contained within section 523(a)(19). *See Senne v. Vill. of Palatine*, 695 F.3d 597, 613 (7th Cir. 2012) (Flaum, J., dissenting) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). To that end, to succeed on an action for nondischargeability under section 523(a)(19), plaintiffs must establish two requirements. First, the debt at issue stems from a securities law violation or fraud in connection with the sale of a security. 11 U.S.C. § 523(a)(19)(A); *In re Jafari*, 401 B.R. at 496. Second, the debt results from a settlement agreement, decision, judgment, order, or decree in a judicial or administrative proceeding. 11 U.S.C. § 523(a)(19)(B); *Id*. The State Court Plaintiffs must establish both Subsection (A) *"and"* (B).  A plain reading of section 523(a)(19)(B) does not remove jurisdiction or adjudicatory authority from the bankruptcy court to hear and decide the merits of a claim for securities law violations. *See* section 523(a)(19)(B) *and In re Hill*, 495 B.R. at 655. Nothing in the text of the statute eliminates this Court's authority to reach a substantive decision. This adversary is a judicial proceeding and this Court can render a decision, judgment, or order.

The *Hill* and *Jafari* decisions stand as bookends on the issue as to whether section 523(a)(19) permits bankruptcy courts to determine liability on a claim based on violations of securities laws or fraud. Both courts thoughtfully analyzed section 523(a)(19)'s legislative history and reached different conclusions. In *Hill*, the court concluded section 523(a)(19)(B) permitted a bankruptcy court to adjudicate liability, damages, and dischargeability. *In re Hill*, 495 B.R. at 660-61.

The court in *Jafari* reasoned that including the subsection (B)
requirement in section 523(a)(19) meant Congress sought to assure that
judgments and settlements in state court fraud cases would be
nondischargeable without the need for relitigation. *In re Jafari*, 401 B.R. at
498. That conclusion is supported by section 523(a)(19)'s 2002 legislative
history:

> Under current laws, State regulators are often forced to "reprove"
> their fraud cases in bankruptcy court to prevent discharge because
> remedial statutes often have different technical elements than the
> analogous common law causes of action. Moreover, settlements
> may not have the same collateral estoppel effect as judgments
> obtained through fully litigated legal proceedings. In short with
> their resources already stretched to the breaking point, state
> regulators must plow the same ground twice in securities fraud
> cases. By ensuring securities law judgments and settlements in
> state cases are non-dischargeable, precious state enforcement
> resources will be preserved and directed at preventing fraud in the
> first place.

148 Cong. Rec. S7418, 7419 (July 26, 2002) (statement of Senator Leahy).

The *Jafari* court, however, then interpreted the meaning of the statute to
require a determination of liability arising outside of the bankruptcy court. *In
re Jafari*, 401 B.R. at 499. This conclusion is neither supported by the
language of the statute or its legislative history.

Congress simply closed a temporal loophole expanding the time for a
plaintiff to receive a judgment beyond the filing of a bankruptcy petition. *Filian
v. Jansma (In re Jansma)*, 2010 Bankr. LEXIS 235, at *8-9; *see also In re Chan*,
355 B.R. 494, 504 (Bankr. E.D. Penn. 2006). The BAPCPA's 2005 amendment
to section 523(a)(19)(B) extended beyond the narrow temporal interpretations of

*Jafari* and *In re Bundy* to also expand the number of tribunals available to adjudicate securities law violations. *See In re Hill*, 495 B.R. at 657. To this point, the court in *Hill* analyzed section 523(a)(19) and its corresponding legislative history and concluded "functionally there is no reason to exclude the bankruptcy court from the securities law adjudication process . . . ." *Id.*

If section 523(a)(19) divests the bankruptcy court from fully adjudicating the securities fraud claim, then investors would be required to file a motion for relief from the automatic stay, and commence a civil action for securities law violations with a different tribunal. *See In re Hill*, 495 B.R. at 659-660. In addition, section 523(a)(19) does not bar a bankruptcy court from reaching the merits of a claim for a securities law violation. To do so is impractical and cuts against "sensible bankruptcy case administration." *Id.* at 660.

The concern for sensible case administration is underscored by the fact that between and among the State Court Plaintiffs, they have filed six different state securities law actions in three separate counties. They have also filed counterclaims asserting that the same operative facts give rise to nondischargeability under not only section 523(a)(19) but also sections 523(a)(2) and (6). There is no suggestion that these latter claims should be decided anywhere but by this Court. "Congress could not have intended to create the procedural mishmash which limited bankruptcy court jurisdiction engenders." *Hill,* 495 B.R. at 660.

Reading section 523(a)(19) together with its legislative history, BAPCPA sought to eliminate the need to relitigate claims by expanding rather than

23

contracting both the time period and the tribunals available to investors alleging securities law violations. Determining the claims in this Court will avoid piecemeal litigation, advance a faster resolution of all claims than would result from the piecemeal approach advanced by the State Court Plaintiffs, and will be more cost effective and efficient for all parties.

This Court finds that section 523(a)(19)(B) permits it to hear the controversy and enter a judgment. *See In re Chui*, 538 B.R. at 807, *aff'd sub nom, Tradex Glob. Master Fund SPC, Ltd. v. Chui*, 559 B.R. 520 (N.D. Cal. 2016).

### C.  <u>**Summary Regarding Abstention**</u>

In summary, I find seven factors (1, 2, 3, 6, 7, 8, and 9) weigh against abstention; three factors (4, 5, and 11) weigh in favor of abstention; and factors (10) and (12) are neutral. The right to a jury trial, while significant, does not compel abstention. The Court must consider and weigh all of the factors keeping in mind that permissive abstention is a narrow doctrine that should be applied in the interests of justice and comity, and after considering all of the factors none of which are dispositive. The "interests of the estate and the parties" will best be served by prompt adjudication of the issues in a single forum. Based on consideration of all the factors, abstention under 28 U.S.C. § 1334(c)(1) is not warranted.

## CONCLUSION

For the foregoing reasons, the State Court Plaintiffs' Motion for Partial Abstention is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated:  July 18, 2017

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge